WEST PORTLAND HOMESTEAD ASS'N v. LAWNSDALE, Assignee.

(*District Court, D. Oregon.* February 21, 1884.)

**1. CONVEYANCE—CONSIDERATION FOR.**

A conveyance under seal is *prima facie* evidence of a sufficient consideration, and a mere stranger to the land cannot question it.

**2. CASE IN JUDGMENT.**

G. and C. were tenants in common of a tract of land which was surveyed and platted as Carter's addition to Portland, and then partitioned between the tenants in common by mutual conveyances, the one to C. containing a small park for the purpose of equalizing the partition, described therein as block 67, and afterwards changed said survey so as to materially diminish said park; and at the same time G. surveyed a tract of land adjoining the tract held in common, into lots and blocks, and together with his co-tenants platted the two tracts as one Carter's addition, and duly acknowledged and recorded the same, with a block numbered 67 in the G. tract, and the small park aforesaid, not numbered. *Held,* that the conveyance to C. of the park as block 67 did not affect the block 67 afterwards laid off in the G. tract, and that the assignee in bankruptcy of C. had no right, interest, or equity therein, and should be enjoined at the suit of G.'s grantee from selling the same as the property of C. and thereby casting a cloud on such grantee's title thereto.

Suit to Enjoin a Sale of Real Property.

*C. P. Heald,* for plaintiff.

*George H. Durham* and *George H. Williams,* for defendant.

DEADY, J. This case was before this court on a plea of the statute of limitations (section 5057, Rev. St.) to the original bill, filed on March 27, 1883, when the former was held good, (17 FED. REP. 205;) and also on a demurrer to an amended bill filed July 24, 1883, which

was overruled. Id. 614. The case has since been heard on such amended bill, the answer thereto, and the replication, exhibits and testimony, and the only question arising thereon is this: was the present block 67, in Carter's addition to Portland, conveyed to Charles M. Carter on September 6, 1871, by the partition deed to him of L. F. and Elizabeth Grover and others, of that date? If it was, this suit cannot be maintained, even if it was included in said deed by mistake, because the right to relief therefrom is barred by section 5057 of the Revised Statutes. But if it was not, then it is equally clear that the defendant, as the assignee in bankruptcy of said Carter, has no right or interest in the property, and may be restrained from selling it as such, and thereby casting a cloud on the title of the plaintiff thereto. This is a question of fact; and without discussing the evidence in detail it is sufficient to say that it is clear and convincing that this block 67 was not in existence—had not been laid off—when this deed was executed, and was not affected by it. Neither did the parties to this conveyance contemplate or understand that the title to this block was in any way involved in the partition of which it forms a part. For although the description in the conveyance—block 67, in Carter's addition to Portland—so far indicates this block as the property intended, as to make a *prima facie* case of identity, yet the plaintiff is entitled to show, and has shown beyond a doubt, that this is a mere coincidence, and that whatever property was intended to be conveyed by the description of block 67, in Carter's addition, it was not and could not be this block 67.

Whenever, for any cause outside of a deed, there arises a doubt in the application of the descriptive part thereof, evidence *dehors* the writing may be resorted to for the purpose of identifying the subject of the instrument and the understanding or intent in this respect of the parties thereto. And it matters not that it may not appear what property was intended to be conveyed by the description of block 67 in this deed, so long as it does not appear that it is the block in dispute. But there is very little room for doubt or controversy on the subject. When the parties had selected the blocks in the common tracts as laid out, up to and including 65, in the first survey, it was found that Mr. J. S. Smith and Charles M. Carter, had less in value, according to the agreed prices, than the other two; and so to equalize the partition, Smith took a small park and numbered it 66, while Carter took another one lying between Summit and East drives, and marked it 67, and the deeds to them were made out accordingly. The plat of this survey was photographed before this partition, and the original was burned in the great fire of 1872. The photographic copy is here, but without the numbers 66 and 67 on it. Soon after this survey and partition of the common tract, the ground, which was uneven and steep and covered with timber and brush, was burned over, and showed such irregularities of conformation as induced the parties to change the survey in some respects, whereby the park al-

lotted and conveyed to Carter, as block 67, was materially reduced in size, and on this account and from its situation regarded as almost worthless.

In platting the subsequent survey of the Grover tract the second survey of the common tract was included therein, and the whole acknowledged and recorded by all the parties thereto on November 4, 1871, as the plat of Carter's addition. In numbering the blocks on the Grover tract, the draughtsman, who was the same person in both cases, commenced at 66, the highest number on the original draught of the plat of the common tract being 65. Before the acknowledgment, however, attention was called to the fact that Smith had been allotted a park in that tract and received a conveyance of it from his co-tenants as block 66, and thereupon the block of that number on the Grover tract was numbered 66½, but the park allotted and conveyed to Carter as block 67 does not appear to have attracted the same attention, and the plat was acknowledged and recorded with only the one block numbered 67 on it—the one in the Grover tract. The probability is that, being comparatively worthless, it was overlooked. It was never listed for taxation; and Mr. Carter testifies that he owned the block adjoining it, and he preferred and so regarded it as public ground or street.

The theory of the defendant is that, although this park in the common tract was allotted and conveyed to Carter as block 67, yet when upon the resurvey this was nearly obliterated, that the parties—and particularly Grover and Carter—came to an understanding that there should be a block 67 laid off in the Grover part of the new Carter's addition, which should stand for and represent the block of that number and description in his deed of September 6th. But the parties to the transaction—Grover, Smith, and Carter—all testify positively that there never was any such agreement or understanding, or even any intention, that Carter should have block 67 in the Grover tract on any account or for any reason; and there is nothing in the case but surmise and conjecture to the contrary. About this time Carter wrote his name on the recorded plat of Carter's addition across all the blocks claimed by him therein, and this block 67 is not among them. If he then understood that it was his, why did he omit to mark it? The omission to do so, under the circumstances, is a deliberate admission that it was not his. He never listed it for taxation or paid any taxes on it. Lists of the property on which he paid taxes for several years after 1871, indorsed on the tax receipts, including sundry blocks in Carter's addition, are produced in court, and this block does not appear in any of them. Carter was one of the corporators of the plaintiff, his name appearing signed to the articles on July 27, 1875, and as such he took the conveyance of this block from the grantors of the plaintiff. This was another deliberate admission that the property was not his, but of the grantors of the plaintiff. And all these admissions were made long prior to the bankruptcy and the

rise of this controversy, and could not, so far as appears, have been made collectively or for any ulterior purpose whatever. And if this surmise or conjecture is even admitted to be a fact, it is not apparent how this verbal understanding between Grover and Carter could have the effect to convey any land of the former to the latter, let alone that of his wife's. Nor was there any reason in right or justice for such an understanding or agreement between the parties. If the partition of the common tract was thought to have resulted unequally as to Carter, by reason of the contraction of the park allotted to him as block 67, Mr. Grover was under no more obligation to make up the deficiency than his two co-tenants, who had received an equal share with himself. The assumption that he would voluntarily undertake to make this deficiency good, and apparently more than good, out of his own or his wife's property, is unreasonable and incredible.

Nor is there any ground on which the plaintiff and its grantors are estopped to assert their title to this block as against Carter's assignee in bankruptcy. In the first place, there is no reason to believe that any of Carter's creditors ever gave him credit on the strength of the ownership of this block. In those days it was an unoccupied, out-of-the-way piece of property and of comparatively small value,—a mere drop in the bucket compared with the value of his estate and the volume of his financial transactions. He never was in possession of it; never laid any claim to it, or exercised any acts of ownership over it. There was no intention to deceive any one by means of the transaction, which occurred seven years before the bankruptcy, nor did it involve any such gross culpable negligence on the part of the plaintiff's grantors as the law considers equivalent to such intention; and more than all this, if any creditor ever was led to believe, from the record of the deed of September 6th to him, that the bankrupt ever owned a block numbered 67, in a Carter's addition to Portland, he would also see that it did not purport to be such a block according to the recorded plat of said addition," and he might also see from the record thereof that such plat was made and acknowledged quite two months after the date of such deed; and thereby he would be informed, or have good reason to believe, that such block must be number 67 on some other and prior, but unrecorded, plat of some other attempted Carter's addition.

It is also claimed by counsel for the defendant that the plaintiff is not a purchaser for a valuable consideration, and therefore cannot maintain this suit. But how that can be material in this controversy between the plaintiff, who appears to have the legal title and a stranger to the property, who does not appear to have any right, interest, or even equity in the premises, is not apparent. But the claim is not even sustained by the evidence. The conveyance from Grover and wife to the plaintiff, on August 11, 1875, purports to have been made in "consideration of the sum of $30,000 to them paid. The

conveyance is under seal, and is *prima facie* evidence of the truth of this recital, or at least that it was executed for a valuable consideration. Code Civil Proc. § 743. And there is not a particle of evidence in the case to the contrary. The most that can be said is that it may be surmised from the evidence and the nature of the transaction that the formation of the plaintiff and the conveyance of this property to it was merely a means of putting it on the market, and that the only consideration which the grantors actually received from the conveyance was in the stock of the corporation. But admitting this to be a fact, the conveyance was nevertheless made upon a valuable consideration, the stock of the corporation standing for the property and having an equal value with it.

The plaintiff is clearly entitled to the relief, and there must be a decree for an injunction restraining the defendant, as prayed in the amended bill, and for the costs, and it is so ordered.